ADELE GERY (now known as Adele Sorg), complainant-appellant,

*v.*

JOB GERY, defendant-respondent.

[Submitted October term, 1932. Decided April 27th, 1933.]

*Mr. Samuel Pet (Mr. Meyer Lobsenz,* of counsel), for the complainant-appellant.

*Mr. Jacob Van Der Clock (Mr. Samuel Rosenfeld,* of counsel), for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

Complainant and defendant are wife and husband. The bill of complaint, seeking partition, was filed June 8th, 1931. It alleged marriage and an estate in the entirety acquired by husband and wife during marriage and prayed that a partition of the lands "may be made if practicable; that if actual partition shall be found to be impracticable, or cannot be made without great prejudice to the owners, then the said lands may be decreed to be sold, and the right of possession during the joint lives of complainant and defendant be sold, the moneys be paid to parties, or be deposited with the clerk of this court, and held by him until the death of either complainant or defendant." No answer was filed and on July 7th, 1931, a decree *pro confesso* was entered embodying an order of reference to a special master to ascertain and report on the matters usual to a partition. On November 12th, 1931, in compliance with a petition filed by the complainant, an order was made giving leave to the complainant to amend her bill by substituting for paragraph one thereof, which alleged marriage and a continuation of the marriage relations, a new paragraph to read as follows:

"Complainant was married to Job Gery on June 22d, 1907, in the city of Paterson, New Jersey. That in divorce proceed-

ings instituted by her against her husband a decree *nisi* was entered on July 30th, 1931, which became absolute by a final decree filed and entered in this court on October 31st, 1931, dissolving the marriage existing between the complainant and defendant herein."

The bill was amended in accordance with the order. The dates of the decree *nisi* and of the final decree of divorce were both subsequent to the filing of the original bill herein. The defendant answered the amended complaint and filed a counter-claim but did not plead any of the matters herein discussed.

On motion by the complainant an order was entered on the advice of Vice-Chancellor Bigelow striking defendant's counter-claim and certain parts of his answer. Thereupon, on January 4th, 1932, on the advice of Advisory Master Backes, the above mentioned decree *pro confesso* and order of reference were vacated and a new decree *pro confesso,* with reference, was made. On January 19th, 1932, the parties were again before the same advisory master on defendant's motion to correct the decree *pro confesso* and order of reference in details that have no relation to the matters now being considered. That officer then, apparently on his own suggestion though no reasons have been presented for our information, caused an order to be made by the chancellor reciting that at the institution of suit the complainant and defendant were still married and still tenants by the entirety, that the suit was premature; that a suit for partition could not be maintained by a wife against her husband while the two were tenants by the entirety and striking the bill of complaint. From the last named order the complainant appeals.

Appellant's first point is that the right to a partition by the complainant having been heard that question is *res adjudicata* because of the order, entered on the advice of Vice-Chancellor Bigelow, striking the counter-claim and certain parts of the answer and the separate defenses. The principle of *res adjudicata* is not applicable. The cause had not reached the stage of a hearing upon its merits. In-

deed the matters recited in the order of dismissal had never been presented or considered; and had the cause gone so far as final hearing the chancellor would properly have dismissed the bill had no ground of equity jurisdiction appeared.

Appellant further contends that a partition of lands owned in the entirety by husband and wife may be maintained, though only the right to possession during the joint lives of both husband and wife can be sold. For the purpose of the argument we shall assume that such part of the prayer of the bill as may be interpreted as asking for a sale of the fee should be treated as surplusage. *Schulz* v. *Ziegler, 80 N. J. Eq. 199; Riccio* v. *Riccio, 101 Atl. Rep. 199* (not officially reported). The question presented is whether or not husband and wife may, while married, have partition one against the other of their rights in the real estate during their joint lives. The rule as it was prior to the Married Woman's act of 1852 was stated in *Den* v. *Gardner, 20 N. J. Law 556,* to the effect that the husband had the right of possession and control over an estate by the entirety during coverture, though he could not so convey the estate as to prejudice the wife's rights in case she should survive him. In this situation there could, of course, be no partition. Then came the Married Woman's act of 1852 and following that the case of *Buttlar* v. *Rosenblath, 42 N. J. Eq. 651,* a court of errors and appeals opinion by Mr. Justice Van Syckel, holding that the statute referred to abolished the common law rule so far as that rule excluded a wife during coverture from the enjoyment of property held by the entirety, but that it did not convert the tenancy into a tenancy in common; that the object and effect of the Married Woman's act was to extinguish the right which the husband had at common law to appropriate to his own use during the life of the wife her estate in lands and real estate thus held and to enable her to possess and enjoy it as fully as if she were a single woman.

Vice-Chancellor Stevenson in *Bilder* v. *Robinson, 73 N. J. Eq. 169,* referring to the *Rosenblath* and other cases, drew the conclusion that "it would seem that the doctrine is thus

established in New Jersey that a conveyance to a husband and wife gives the wife a legal estate for their joint lives as a tenant in common with her husband. * * * When our statute prevents the husband from appropriating the entire rents and profits and vests in the wife an equal right with him to receive and enjoy those rents and profits, it follows that a freehold estate must be recognized as vesting in the wife corresponding with her right to enjoy the rents and profits, and a similar freehold estate m'ust be recognized as vested in the husband corresponding with his right. This seems to be the plain result of the decision of the court of errors and appeals in the *Buttlar Case*."

In *Schulz* v. *Ziegler, supra,* a husband, Jacob Ziegler, being, with his wife, Louisa Ziegler, the owner of premises by the entirety, conveyed all of his right, title and interest in the lands to his daughter, who thereafter filed a bill for partition against her mother alleging that the daughter and mother had become "seized thereof as tenants in common in fee-simple in the said premises for and during the joint lives of the said Jacob Ziegler and said Louisa Ziegler, his wife." Chancellor Walker, then vice-chancellor, writing the opinion for the court of chancery, stated that the description of the estate as a fee-simple was erroneous but held that "the first section of our Partition act (*P. L. 1898 p. 644; Comp. Stat. p. 3897*) gives the right to partition to tenants in common, and the parties to this suit are such. True, their estate is less than a fee-simple, but it is an estate for the joint lives of the parents of the complainant, and such an estate is partible." Mr. Justice Parker, in writing the opinion of the court of errors and appeals, concurring for the most part upon the grounds expressed in the memorandum below, said: "We hold, therefore, that by virtue of an estate by entireties, as modified by the Married Woman's act, the seizin of husband and wife during the joint lives is essentially a tenancy in common, terminated on the death of either, with remainder in fee to the survivor; and that the right of the husband may be transferred by him to a third party who thereby becomes tenant in common for the joint lives in the

husband's place; and that partition may be had between such purchaser and the wife of this tenancy in common, but without affecting in any way the common law right of survivorship."

In 1917 Vice-Chancellor Foster in *Riccio* v. *Riccio, supra,* wherein partition was sought by absolute sale of real estate owned by the parties complainant and defendant as husband and wife by the entirety, allowed a sale of the right of possession during the joint lives. The vice-chancellor considered that the opinion of this court in the *Schulz Case, supra,* supported that step. We think that it did not.

Finally, in *Platt* v. *Platt, 93 N. J. Eq. 395,* Vice-Chancellor Fielder, citing no authorities, held that the seizin of a husband and wife in lands held by the entirety is that of a tenancy in common for their joint lives with the remainder in fee to the survivor and that partition cannot be had between husband and wife of an estate so held.

The argument for partition, reduced to simple terms, is this: An estate in common is partible; the estate of husband and wife in real estate held by the husband is an estate in common; therefore an estate so held by husband and wife is partible. In our opinion that reasoning contains an error in that it imputes to an estate so held by husband and wife the character of an estate in common in the full sense of that phrase. Such an estate has many of the aspects of a tenancy in common. The *Schulz Case, supra,* says that it is *essentially* that; and we understand those words to mean, as indeed we find the law to be, that the husband and wife are tenants in common as to the right of possession and the use of the property and as to the right of either spouse to convey his or her estate for the term of the joint lives to a third party. But the estate by the entirety has not been abolished in this jurisdiction. It still exists, a *sui generis* species of tenancy with its origin solely in the marriage state and retaining so long as the title, during coverture, remains in the husband and the wife, the fundamental characteristic that each spouse is seized of the whole or the entirety and not of a share, moiety or divisible part;

to use the ancient law Latin, the seizin, during the period named, is *per tout et non per my* as distinguished from a tenancy in common which is *per my et non per tout* and from a joint tenancy which is *per my et per tout.* If either the husband or the wife conveys his or her interest for the period of the joint lives to a third person, as we held in the *Schulz Case* could be done, then the *per tout* aspect of the estate falls with the reason for its existence and the retaining spouse and the stranger become tenants in common during the joint lives of husband and wife, leaving little that is characteristic of an estate by the entirety except the incident of survivorship.

The complainant and defendant were, at the filing of the bill, husband and wife. The title lay in both as tenants by the entirety. The indivisibility of that title prevented a partition while that status remained.

It is finally urged that the decree to dismiss the proceedings can only refer to the pleadings as they stood at the time of the decree, this being the appellant's method of asserting that the amendment to the bill caused the bill to speak as of the time of, and in accordance with, the matter presented in the amendment, and that inasmuch as at the time of the amendment the husband and wife were divorced, and the amendment so recited, the chancellor was in error in striking the bill upon the reasons given in the order. It is true that a divorce terminates an estate by the entirety and creates a tenancy in common, with respect to which a partition may be had. *Buttlar* v. *Buttlar, 67 N. J. Eq. 136; affirmed, Ibid. 729; Chard* v. *Chard, 104 N. J. Eq. 443.* Consequently under the authority cited, *supra,* the complainant, after her divorce and upon pleading properly, was entitled to maintain a suit for partition.

Complainant could not maintain her suit upon the facts as they were at the time of the filing of, or as they were pleaded in, the original bill. The proper practice, where the complainant has mistaken her case, is to dismiss the bill without prejudice to a new one. *Codington* v. *Mott, 14 N. J. Eq. 430; Fodor* v. *Kunie, 92 N. J. Eq. 301.* An addi-

tional right accruing to a complainant pending the suit should be set up by way of supplemental bill (*Vaiden* v. *Edson, 85 N. J. Eq. 65; affirmed, Ibid. 184*); this procedure, however, usually assumes that the complainant's original bill is sufficient to entitle her to one kind of relief. *Allen* v. *Taylor, 3 N. J. Eq. 435.* Amendments are made in equity with great liberality, chancery rule 78, *et seq.*, but the indulgence does not go so far as to entitle a complainant as a matter of right to make a new case thereby (*Codington* v. *Mott* and *Fodor* v. *Kunie, supra*); and if not a new case, certainly not a new case that has arisen since the filing of a bill that, when filed, did not present a cause of action; particularly when the cause of action set up by the amendment has been created by a change in the status of the complainant, viz., from that of a wife to that of a divorcee.

It may be argued that the right to amend is not now in controversy inasmuch as an order remaining in the record granted permission to amend, and that to put the complainant out of court because she presented her newly acquired right by an amended, rather than by a new or supplemental bill, is a technicality that serves no useful purpose. But the granting of the order to amend seems to have been *pro forma,* made without considering or determining the efficacy of the practice to enable the pleader to obtain her object; and it is at least doubtful whether the order would have been allowed had this question been submitted. The fact remains that the complainant did not follow the settled practice; and whatever discretion the chancellor may have had to permit the complainant to proceed on the pleadings as framed, it was within his discretion not to do so.

We find no error. The judgment below will be affirmed, without prejudice to the filing of a new bill.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.